```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
                     FORT WORTH DIVISION
```

| | | |
|---|---|---|
| JOSEPH HOPKINS, ET AL. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:05-CV-332-Y |
| | § | |
| CORNERSTONE AMERICA, ET AL. | § | |

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Partial Summary Judgment (doc. #216). Defendants seek partial summary judgment on the ground that the statute of limitations has run as to the claims of twenty-six of the thirty-six remaining opt-in plaintiffs in this collective action under the Fair Labor Standards Act ("FLSA"). After review, the Court concludes that Defendants have not established when these plaintiffs' claims accrued and, therefore, have not established that their claims are barred by limitations. As a result, the motion will be denied.

I.  Background

The general factual background of this case is set out in greater detail in the Court's previous order on the parties' motions for summary judgment (doc. #104). Defendant Cornerstone America ("Cornerstone") is the sales and marketing division of defendant Mid-West National Life Insurance Company of Tennessee ("Mid-West"). Defendant United Insurance Companies, Inc. ("UICI"), is Mid-West's parent company.

Cornerstone uses a system in which "sales agents" agree to work as independent contractors in exchange for commissions. Some sales agents are promoted to the position of "sales leader"--a management-

level position--but agree by contract to remain as independent contractors. The original plaintiff, Joseph Hopkins, filed this suit for unpaid overtime wages under the FLSA. Hopkins insists that, despite this contractual agreement, sales leaders are employees under the FLSA and are thus entitled to overtime compensation. On February 4, 2008, the Court granted conditional certification of this case as a collective action and, on April 8, approved the notice to be sent to the putative class. Fifty-six additional plaintiffs opted into this suit. Twenty of these plaintiffs have since opted out or otherwise been dismissed from this suit, leaving thirty-six plaintiffs.

At issue in this motion is whether the statute of limitations bars expired as to the FLSA claims pursued by twenty-six of the thirty-six remaining plaintiffs. Specifically, at issue are the FLSA claims made by Jon Abrams, Carl Anderson, Nicholos Baccari, Al Bilodeau, Clifford Brown Jr., Peter Denboer, Benjamin Doolittle, Shanen Ebersole, Jennifer Flesher, Robert Frank, Paul Gerrish, James Gundersen, Justin Hatton, Jeffrey Jones, Kent Klingshirn, Steven Krol, David Norkus, Donald Rockwood, Robert Rudd, David Sekerak, Montee Skorich, Race Stein, Theodore Stokes, David Thornton, Nicholas Ventura, and Shaw Wolff. Plaintiffs' claims relate to the time during which they worked as sales leaders. Defendants have produced evidence, which is not disputed by Plaintiffs, establishing when each of these twenty-six plaintiffs began but have since

stopped working as a sales leader.[1]  Each of these plaintiffs filed their consent to become a party plaintiff more than three years after

---

[1] This period for the twenty-six sales leaders relevant to this motion is as follows:
  1. Jon Abrams was a district sales leader from March 5, 2004, until February 10, 2005. (Mot. App. at 3.)
  2. Carl Anderson was a district sales leader from February 14, 2003, until August 22, 2003. (*Id.* at 8-12.)
  3. Nicholos Baccari was a district sales leader from March 26, 2004, until October 28, 2004. (*Id.* at 19-22.)
  4. Al Bilodeau was a district sales leader from April 4, 2003, until February 12, 2004. (*Id.* at 28-29.)
  5. Clifford Brown Jr. was a district sales leader from October 10, 2003, until December 12, 2003. (*Id.* at 35-36.)
  6. Peter Denboer was a district sales leader from March 8, 2002, until January 8, 2004. (*Id.* at 43-44.)
  7. Benjamin Doolittle was a district sales leader from March 28, 2003, until August 20, 2004. (*Id.* at 48-49, 52.)
  8. Shanen Ebersole was a district sales leader from January 10, 2003, until December 4, 2003. (*Id.* at 60-61.)
  9. Jennifer Flesher was a district sales leader from July 2, 2004, until March 2, 2005. (*Id.* at 67-68.)
  10. Robert Frank was a district sales leader from October 18, 2002, until December 11, 2003. (*Id.* at 74-76.)
  11. Paul Gerrish was a district sales leader from December 28, 2001, until November 7, 2002. (*Id.* at 80-83.)
  12. James Gundersen was a district sales leader from April 4, 2003, until January 17, 2004. (*Id.* at 88-90.)
  13. Justin Hatton was a district sales leader from September 28, 2001, until June 11, 2003, and then a regional sales leader from June 12, 2003, until May 13, 2004. (*Id.* at 101-03.) Hatton then served as a district sales leader from May 14, 2004, until September 16, 2004. (*Id.* at 104-06.)
  14. Jeffrey Jones was a regional sales leader from January 30, 2004, until October 28, 2004, then he became district sales leader from October 29, 2004, until February 3, 2005. (*Id.* at 114-115, 110.)
  15. Kent Klingshirn was a regional sales leader from April 19, 2002, to August 13, 2004, and then became a district sales leader from August 13, 2004, until October 8, 2004. (*Id.* at 120-123.)
  16. Steven Krol was a district sales leader from November 11, 2002, until May 29, 2003, and then a regional sales leader from May 30, 2003, until June 28, 2004. (*Id.* at 130-132.)
  17. David Norkus was a regional sales leader from June 24, 1998, until May 20, 2003. (*Id.* at 138-143.)
  18. Donald Rockwood was district sales leader from August 2, 2002, until August 12, 2004. (*Id.* at 149-151.)
  19. Robert Rudd was a district sales leader from July 24, 2002, until April 1, 2003. (*Id.* at 155.)
  20. David Sekerak was a regional sales leader from June 13, 2003, until August 12, 2004, and then became a district sale leader from July 13, 2004, until October 19, 2004. (*Id.* at 165-167.)
  21. Montee Skorich was a district sales leader from December 28, 2001, until April 21, 2005. (*Id.* at 176-179.)
  22. Race Stein was a district sales leader from July 3, 2003, until April 21, 2005. (*Id.* at 186-188.)
  23. Theodore Stokes was a district sales leader from October 5, 2001, until September 25, 2003. (*Id.* at 193-194.)
  24. David Thornton was a regional sales leader from April 27, 2001, until November 20, 2003. (*Id.* at 201-204.)
  25. Nicholas Ventura was a district sales leader from October 11, 2002, until October 3, 2003. (*Id.* at 209, 211-212.)
  26. Shaw Wolff was a district sales leader from August 29, 2003, until April 19, 2004. (*Id.* at 218-223.)

ending his or her work as a sales leader.[2]  According to Defendants, the consents were filed after the FLSA's statute of limitations expired. Consequently, Defendants seek summary judgment as to these plaintiffs' FLSA claims.

II.  Discussion

  A.  Summary-Judgment Standard

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  The Court must review the evidence in light of the governing substantive law, viewing the facts in the light most favorable to the nonmoving party.  *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990); *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).  In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.  *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment.

---

[2] Abrams, Baccari, Bilodeau, Brown, Denboer, Doolittle, Ebersole, Flesher, Frank, Gerrish, Gunderson, Hatton, Jones, Krol, Norkus, Rockwood, Rudd, Sekerak, Strokes, Thornton, Ventura, and Wolff filed their consents to join this suit on June 27, 2008. (Doc. # 161-Ex.1-6, 8, 10-11, 15-16, 18, 20, 24-24, 30, 34, 36-38, 41-42, 46).  Klingshirn, Skorich and the estate of Stein filed their consents to join the suit on July 7, 2008.  (Doc. # 162-Ex.48-50).

4

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994).

When the moving party bears the burden of proof on a matter, such as a defendant seeking summary judgment on an affirmative defense, it must produce evidence establishing "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see also Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). Such a movant's showing must be such that the court can conclude that no reasonable trier of fact could find other than for the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

When the movant has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely

5

colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

    B.  Analysis

Defendants, in their brief in support of their motion for summary-judgment, apply the three-year statute of limitations for willful violations of the FLSA. 29 U.S.C. § 255(a). The limitations period on an FLSA claim for unpaid overtime begins to run on the payday for the period during which the employee rendered services for which overtime compensation is claimed. *See Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987). An action is commenced for a named party by the filing of a complaint and consent to become a party plaintiff and, for parties not specifically named, on the date the unnamed party files written consent. *See* 29 U.S.C. § 256. As recounted above, Defendants have produced evidence that the twenty-six plaintiffs at issue in this motion did not consent to join this suit, and thereby commence their actions, for more than three years after their employment as sales leaders ended.

But Defendants have produced no evidence regarding when the claims of the twenty-six plaintiffs accrued. There is no discussion of when these plaintiffs were last paid for their service as sales leaders and, thus, no indication of when they should have been paid overtime. Indeed, Defendants' motion does not expressly address the accrual of these plaintiffs' claims at all. Instead, Defendants' argument seems to assume that the statute of limitations can be

applied from the date the plaintiffs were last employed as sales leaders. But this is not the law. The plaintiffs' claims accrued, and the statute of limitations began to run, on the date that they should have been paid overtime compensation but were not so paid. *See Halferty*, 821 F.2d at 271. That is, these plaintiffs' claims accrued on the date of the payday on which they should have received overtime compensation, not on the last day of the employment related to the overtime claims.

III.  Conclusion

Defendants have not established, as a matter of law, when Plaintiffs' FLSA claims for overtime accrued and, consequently, have not established that the statute of limitations has run on these claims. As a result, Defendants' motion for partial summary judgment is DENIED.

SIGNED December 17, 2009.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE