**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**



| | | |
|---|---|---|
| **JOSEPH HOPKINS, et al.,** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4-05-CV-332-Y** |
| | § | (Consolidated with 4-05-CV-333-Y |
| **CORNERSTONE AMERICA, et al.,** | § | and 4-05-CV-334) |
| | § | **ECF** |
| **Defendants.** | § | |

**JOINT MOTION FOR SETTLEMENT HEARING**
**AND BRIEF IN SUPPORT THEREOF**

In accordance with the Court's Order of January 22, 2010 denying the Parties' "Joint Motion for Order Approving Settlement and Motion to Present Settlement Papers in Camera" (Doc. No. 249), Joseph Hopkins, Sherrie Blair, Andrew Bowman, Chris Fox, Bob Howell, Mark Mann, Norm Campbell, Mark Croucher, Jeff Gessner, Terrance Johansen, Donnie Klein, Scott Roughen, Steve Woodhead, Dave Young, (collectively the "Named Plaintiffs") Cornerstone America, Mid-West National Life Insurance Company of Tennessee and United Insurance Companies, Inc. (collectively "Cornerstone") (collectively "the Parties") file this Joint Motion for Settlement Hearing and Brief in Support Thereof and, in support, would show as follows:

## I.
## INTRODUCTION

All Parties respectfully renew their request that the Court review their global settlement agreement *in camera* or in the alternative, hold a settlement hearing and review the agreement in open court. The Parties also jointly request the Court to schedule an oral settlement hearing so that the Court can review the settlement, review the allocation of the settlement proceeds and consider whether the Parties' need for confidentiality trumps the general rule of open access to

records. There is precedent for this procedure. *Bartelloni v. DeCastro*, 2007 WL 2155646 (S.D. Fla. 2007) (holding that an appropriate method of reviewing a proposed confidential settlement in a FSLA case is to hold a fairness hearing and allow parties an opportunity to explain "why their need for confidentially trumps the general rule of open access to records.")

There are compelling reasons to maintain the confidentiality of the terms of the Parties' settlement agreement. This simply is not a "garden variety" overtime case under the Fair Labor Standards Act ("FLSA") because, (1) the retaliation claims of the Named Plaintiffs are unique and the majority of the settlement payment is intended to address those claims; (2) there already has been public disclosure of the allegations and defenses in the lawsuit through the notice to putative class members and through publication of the Court's summary judgment order and the Fifth Circuit's decision affirming that order and, (3) public dissemination of the settlement terms could cause confusion and prejudice to Defendants. For these reasons, the justification for public disclosure of the terms of a settlement that may exist in most FLSA cases are absent here.

In support of the request for approval of the global settlement agreement, Plaintiffs' counsel, serving as counsel for the purported class, submit that they and Plaintiffs are completely satisfied that Plaintiffs and the individuals who have consented to opt into this case will be wholly compensated under the terms of the agreement for all of their claims, including their claims for unpaid overtime. Additionally, Plaintiffs acknowledge that: (a) Plaintiffs fully understand the FLSA global settlement agreement; (b) the FLSA global settlement agreement specifically applies to a knowing and voluntary release of the relevant and specified rights and claims Plaintiffs and the opt-ins may have against Defendants; and (c) Plaintiffs have consulted with an attorney of their choice, here their counsel of record, before authorizing their counsel to execute the FLSA global settlement agreement and are entering into it knowingly and

voluntarily. Given that the Parties have agreed that the terms reflected in the settlement agreement are mutually satisfactory and represent a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions the Parties respectfully request that the Court review the agreement *in camera* and approve it.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Background Regarding Settlement of FLSA Overtime Disputes.

Employees can settle and release claims under the FLSA in two ways. First, section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the Secretary of Labor supervises the payment of unpaid wages by the employer to the employee. *See* 29 U.S.C. § 216(c) (2008); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *see also D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946) (discussing propriety of allowing settlement of FLSA claims where district court has reviewed terms of settlement agreement). A district court has considerable discretion not only in determining the fairness of any settlement, but also in determining the means by which it evaluates fairness. *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 850 (5th Cir. 1975) (stating that the court could only review the lower court's approval of a settlement for an abuse of discretion and should not substitute its notions of fairness for those of the Parties and the trial judge absent a strong showing to the contrary).

In its January 22 Order, the Court accurately noted that the Parties had not submitted their proposed settlement agreement to the Court for review. The Parties fully intend to do so. There

is nothing, however, nothing in the FLSA or the interpretive case law that requires the Parties to file their settlement agreement so that it becomes a part of the public record. Indeed, courts regularly approve FLSA settlement agreements after reviewing the terms *in camera* and/or based on counsel's representations regarding the terms. *See, e.g., Freyre v. Tin Wai Hui DMD, P.A.*, No. 08-cv-22801, 2009 WL 89283 at *1 (S.D. Fla. Jan. 13, 2009) (approving confidential FLSA settlement based on, (1) representations of the Parties that agreement provided plaintiffs with full recovery, and, (2) *in camera* review of agreement); *Goudie v. Cable Commc'ns, Inc.*, No. 08-cv-507, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009) (approving confidential FLSA settlement agreement after reviewing same *in camera*); *Trinh v. JPMorgan Chase & Co.*, 07-cv-01666 W(WMC), 2009 WL 532556, at *1 (S.D. Cal. March 3, 2009) (noting that the FLSA settlement agreement at issue was reviewed *in camera*); *Freyre v. Tin Wai Hui DMD, PA.*, No. 08-cv-22810, 2009 WL 89283 at *1 (S.D. Fla. Jan. 13, 2009) (approving confidential FLSA settlement agreement based on (1) representations of parties that agreement provided plaintiff with full recovery, and (2) *in camera* review of agreement).

Furthermore, numerous other courts, including courts in the Southern and Eastern Districts of Texas, have sealed FLSA settlement agreements. *See Peterson v. Meritage Homes of Fl., Inc.*, No. 2:08-cv-72-FtM-29SPC, 2008 WL 5110784, at *1 (M.D. Fla. Dec. 2, 2008) (noting that the court granted motion to seal settlement agreement); *see also*, Exhibit A, Orders sealing FLSA settlement agreements. Therefore, the Parties respectfully request that the Court hold an *in camera* hearing for the purpose of reviewing and approving the settlement agreement. In the alternative, the Parties request that the Court hold such a hearing in open court. The Parties will present the settlement agreement to the Court for review during the hearing so that the Court can make a fairness determination. In addition, given that the Parties have reached a mutually

agreeable settlement, they further request that the Court stay any further proceedings in this case until a fairness hearing can be held.

**B. <u>History Of Negotiations Leading Up To The Parties' Settlement.</u>**

The Parties want to make sure the Court is aware that they have jointly drafted the settlement agreement which would govern the resolution of this case. The Parties have reached an agreement as to all material terms. As the Court may recall, on December 17, 2009, the Parties participated in mediation before mediator Cecilia Morgan. The Parties did not reach a resolution at the mediation, but continued discussions thereafter and during the Christmas holidays. The culmination of those discussions was the eventual agreement to settle all disputes in this case as memorialized in the Parties' agreement.

The agreement contains all of the material terms of the Parties' resolution, including confidentiality provisions, a liquidated damages provision in the event of a breach of the confidentiality provisions, mutual releases, nondisparagement provisions, and, of course, the amount and division of payments to be made by Defendants to the opt-in and Named Plaintiffs. The agreement is the result of weeks of negotiations that occurred during and after the mediation.

The Parties intend to present the settlement agreement to the Court to review *in camera* during the requested hearing so that it can make the necessary determination of fairness. For the reasons set forth herein, the Parties' jointly request that the Court make that determination either *in camera* as part of a settlement conference or, alternatively, in open court.

**C. <u>The Balance of Interests in this Case Favors an *In Camera* Hearing.</u>**

Fifth Circuit has recognized that, although there is a presumption of public access to judicial records, every court has supervisory power over its own records and the discretion to manage access to such records. *See Securities & Exchange Comm'n v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (noting that the district court's discretion in this regard must be

exercised "charily"). Furthermore, the Fifth Circuit has expressly declined to adopt a "strong presumption" in favor of public access to records and, instead, has held that the presumption of public access is merely one of the interests to be weighed in determining whether to allow public access to its records or not. *See id.* at n. 4; *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981) (analyzing the Supreme Court's decision in *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) and refusing to find an "overpowering presumption" in favor of public access). Here, the balance of interests favors non-disclosure of the Parties' settlement agreement and, therefore, an *in camera* hearing for the purpose of reviewing and approving their settlement agreement.

**1. The Parties have voluntarily entered into a confidential settlement.**

Courts recognize that settlement is the preferred means of resolving litigation. *Williams v. First Nat'l Bank*, 216 U.S. 528, 595 (1910); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391-92 (5th Cir. 1984). In assessing a settlement agreement to be approved, courts should keep in mind the strong presumption in favor of finding a settlement fair and remain aware that a settlement is a compromise, "... a yielding of the highest hopes in exchange for certainty in resolution." *Collins v. Sanderson Farms, Inc.*, 568 F.Supp. 2d 714, 720 (E.D. La. 2008).

In this case, the settlement agreement was the product lengthy negotiations between the Parties, which continued after they had engaged in mediation. Plaintiffs and Defendants contributed equally to the drafting of the settlement agreement and each of the Plaintiffs has agreed to the settlement terms after full disclosure and an opportunity to review them. The Plaintiffs also were given an opportunity to consult with counsel of their choosing prior to agreeing to the settlement. Finally, while the Parties acknowledge that some courts have stated that a confidentiality agreement alone is not enough to overcome the presumption of public

access, the fact that the Parties have agreed to keep the agreement confidential is a factor weighing in favor of an *in camera* review.

In sum, the fact that the Parties have voluntarily entered into a confidential settlement agreement strongly favors an *in camera* review for the following reasons: (a) settlement is the preferred means of resolving disputes; (b) the settlement in this case was the product of arm's length negotiations; (c) all of the named and opt-in plaintiffs have reviewed and agreed to the terms of the agreement; (d) the Parties have mutually agreed to keep the terms of the settlement confidential. To ensure that the Parties and the Court are not forced to expend resources unnecessarily to try a case that the Parties have resolved the Parties respectfully request that the Court hold an "*in camera*" hearing to approve the settlement.

**2. The nature of Plaintiffs' claims diminishes the interest in public disclosure that exists in a typical FLSA lawsuit.**

As the Court recognized in its January 22 Order, a factor weighing in favor of public access to a typical FLSA settlement agreement is that the minimum wage and overtime provisions of the Act were designed to address a threat to the public health and welfare—namely low wages and excessive working hours. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Al. 2003) (noting that the public character of an FLSA dispute is based on Congressional intent to protect the public from substandard wages and excessive hours that endangered the national health). This case is not a "garden variety" FLSA case, however. Critically, the Named Plaintiffs in this case are suing not just for unpaid overtime, but also for retaliation based on Defendants' failure to continue to pay certain renewal commissions after the filing of the lawsuit. Indeed, the bulk of the settlement funds are not attributable to Plaintiffs' allegations that Defendants failed to pay them overtime. Rather, a significant portion of the settlement funds are directed to the Named

Plaintiffs' retaliation claims. Plaintiffs' retaliation claims do not raise the same public concerns as Plaintiffs' overtime claims, and, therefore, the need for public access to the Parties' settlement agreement is less compelling.

**3. There already has been disclosure of the substance of the lawsuit.**

Another reason that public disclosure of the terms of the Parties' settlement is not necessary is that the lawsuit, and the nature of Plaintiffs' claims and allegations concerning their employment status while serving as agents of Defendants, already is in the public domain. First, as an FLSA collective action, all sales leaders in the putative class were provided with the notice approved by the Court and alerted to the existence of the lawsuit and substance of the allegations therein. Accordingly, the individuals with the most compelling need to know about the lawsuit, and the claims asserted by the Named Plaintiffs, already are aware of the nature of the dispute between the Parties and either elected to join the lawsuit or declined to do so. Additional disclosure through the terms of the Settlement Agreement would not provide additional information, other than the terms of the actual settlement, than that which putative class members already were aware.

Similarly, the substance of the lawsuit already is part of the public domain through the published decisions of this Court as well as the Fifth Circuit Court of Appeals on the Parties' original cross motions for summary judgment as to the employment status of the sales leader Plaintiffs. Accordingly, unlike in most FLSA cases in which there is not an interlocutory appeal on a critical issue, information about the Parties' dispute already is in the public domain and is fully accessible by anyone interested.

**4. Disclosure of the Parties' Settlement Agreement could cause confusion and prejudice to Defendants.**

The Court's original summary judgment order finding that Plaintiffs were "employees" rather than independent contractors, for the purposes of the FLSA, as well as the Fifth Circuit's opinion affirming that determination, emphasized that the Plaintiffs in this case did not hold typical insurance agent positions. To the contrary, their status as sales leaders, and the economic realities associated with that status, informed both Courts' rulings. Appropriately, both this Court and the Fifth Circuit Court of Appeals took pains to emphasize that their rulings were specific to the Plaintiffs' status as sales leaders, as opposed to simply independent insurance agents, which make up the majority of Defendants' sales force. The Parties, and in particular Defendants, fear that disclosure of the terms of the Parties' settlement agreement, and commentary thereon, would not fully recognize this critical distinction. In other words, the settlement could be construed as applying a class of agents who, in fact, are not part of the putative class, thereby causing confusion and potential prejudice to Defendants.

Moreover, the Court's original summary judgment order applied only to the Named Plaintiffs in the case, not the opt-ins who later joined as Plaintiffs. Accordingly, there has been no judicial determination that the opt-in Plaintiffs, or, critically, other individuals who signed independent insurance contracts with Defendants, are in fact employees for the purposes of the FLSA or otherwise. Public disclosure of the terms of the Parties' Settlement Agreement could convey the inaccurate impression of a judicial determination of employee status for parties other than the Named Plaintiffs in the case. This possibility raises obvious concerns for Defendants.

**5. Other courts have authorized the relief sought herein.**

Another factor weighing in favor of an *in camera* hearing in this case is that courts facing similar requests in the FLSA context to seal settlement records or to review settlement

agreements in camera have granted such requests. *See* cases cited *supra* at pg. 4-5. For example, in *Bartelloni v. DeCastro*, 2007 WL 32155646 (S.D. Fla. 2007), the court, while weighing other options, determined that a "fairness hearing," at which time the Parties would be able to more fully explain their need for confidentiality, trumped the general rule of open access to records. The court further noted that, during such a hearing, it could review the actual settlement agreement and make an assessment of fairness at that time. This is precisely the relief sought herein.

## III.
## CONCLUSION

Because the confidentiality provision is an essential term of the Parties' Agreement and both parties seek to avoid the burden and expense of further litigation, they respectfully request that the Court review the terms of the Agreement *in camera* and/or through counsel's representations of the terms at hearing. The Parties further requests that, based on this review, the Court find that the terms of the Agreement fairly and reasonably resolve this bona fide dispute over Plaintiff's FLSA claims, which is all the FLSA requires. In the alternative, the Parties jointly request that the Court set an oral hearing for the purpose of reviewing and approving the Parties' settlement agreement in open court. Finally, the Parties respectfully request that the Court stay this case until a fairness hearing on their settlement agreement can be held.

Respectfully submitted:

*/s/ Francisco Guerra, IV*
Francisco Guerra, IV
Texas Bar No. 00796684
Mikal C. Watts
Texas Bar No. 2098120

**WATTS LAW FIRM LLP**
Bank of America Plaza, Suite 100
300 Convent Street
San Antonio, Texas 78205
Telephone:
Facsimile: 210.527.0501

Larry A. Flournoy, Jr.

**JORDAN, HOUSER & FLOURNOY LLP**
740 East Campbell Rd., Suite 5600
Richardson, TX 75081
Telephone:
Facsimile: 214.242.2170

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Paulo B. McKeeby*
Ronald E. Manthey
Texas Bar No. 12927400
Ron.Manthey@morganlewis.com
Paulo B. McKeeby
Texas Bar No. 00784571
Paulo.McKeeby@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone: 214.466.4000
Facsimile: 214.466.4001

Steven R. McCown
Texas State Bar No. 13466500
Eduardo F. Cuaderes, Jr.
Texas State Bar No. 05200800

**LITTLER MENDELSON**
A Professional Corporation
2001 Ross Avenue, Suite 1500
LockBox 116
Dallas, Texas 75201.2931
214.880.8100
214.880.0181 (Fax)
Linda Ottinger Headley
Texas State Bar No. 15344600
Yvette Gatling
Texas State Bar No. 24007231

**LITTLER MENDELSON**
A Professional Corporation
1301 McKinney Street
Suite 1900
Houston, Texas 77010
713.951-9400
713.951.9212 (Fax)

David E. Keltner
Texas State Bar No. 11249500

**KELLY HART & HALLMAN, LLP**
Fort Worth, Texas 76102
(817) 878-3560
(817) 878-9280 (Facsimile)

**ATTORNEYS FOR DEFENDANTS**